**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

<table>
<tr><td>

BIRTH OF A NEW WORLD MONUMENT LLC and ZURAB TSERETELI,

     **Plaintiffs,**

       v.

JOSÉ I. GONZÁLEZ FREYRE, PAN AMERICAN GRAIN COMPANY, INC. and COLUMBUS PARK CORPORATION

     **Defendants.**

</td><td>

**CIVIL NO. 19-1235 (RAM)**

</td></tr>
</table>

**OPINION AND PRELIMINARY INJUNCTION ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court are Plaintiffs' *Urgent Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a).* (Docket No. 41), as well as their subsequent motion requesting resolution of said preliminary injunction petition (Docket No. 120). For the following reasons, Plaintiffs' request for a preliminary injunction is **GRANTED**.

## I.    BACKGROUND

    Birth of a New World Monument, LLC ("BONWM") and Zurab Tsereteli ("Tsereteli"), collectively "Plaintiffs," filed the present lawsuit alleging nine causes of action, including breach of contract and fraud, against José I. González-Freyre ("González"), Pan American Grain Company, Inc. ("PAG"), and Columbus Park Corporation ("Columbus Park"), collectively "Defendants." (Docket No. 1). Plaintiffs subsequently filed an

*Amended Complaint* incorporating jurisdictional facts in accordance with this Court's order at Docket No. 18. (Docket No. 19).

Tsereteli is the artist who created the Birth of a New World Monument (the "Monument"), a 260 feet tall statue depicting Christopher Columbus traversing the Atlantic Ocean. Id. ¶¶ 14, 18-9. The Monument was installed in Arecibo, Puerto Rico pursuant to agreements between the parties, specifically the 2013 Agreement. Id. ¶¶ 18 33, 46, 54, 68. Since having filed the *Amended Complaint*, Plaintiffs contend that members of the public are "obtaining unrestricted access" to the Monument and climbing on top of it, "creat[ing] a clear and present danger to members of the public and the Monument alike." (Docket No. 41 ¶ 4). Consequently, Plaintiffs filed an U*rgent Motion for Preliminary Injunction Under Fed. R. Civ. P. 65(a)* accompanied by a *Memorandum of Law in Support*. (Docket Nos. 41 and 41-1, respectively). In the *Memorandum of Law in Support*, Plaintiffs detail their plan to erect a fence around the Monument to impede trespassers and note Defendants' oppositions to the fence's construction. (Docket No. 41-1 at 5-8). Plaintiffs assert that: (1) they are entitled to construct a security fence; (2) the fence would place no hardship on Defendants; (3) public interest would benefit from the security fence; and (4) the absence of a fence would lead to irreparable harm to the multi-million dollar Monument as well as to any individual who attempts to climb it. Id. at 9-11. Ultimately,

Plaintiffs request a preliminary injunction enjoining Defendants from preventing the construction of the fence or unilaterally removing it during the pendency of the present lawsuit. Id. at 12.

In response, Defendants filed an *Opposition to Motion Requesting Preliminary Injunction and Memorandum in Support Thereof*. (Docket No. 61). Defendants argue that the 2013 Agreement between the parties does not give Plaintiffs the right to construct a fence. Id. Further, Defendants counter that a private security guard would be a better alternative to the fence, but Plaintiffs have refused to engage the services of one, despite having hired one in the past.[1] Id. ¶ 2.

The Court held a Preliminary Injunction Hearing and gave the parties time to reach a stipulation regarding the security fence. (Docket No. 92). The parties were unable to reach a settlement and instead, presented their arguments. Id. The Court takes judicial notice that shortly after the hearing, due to Covid-19, the Governor of Puerto Rico ordered the closure of governmental and private sector operations and implemented a strict curfew which temporarily abated the need for a preliminary injunction. *See* Executive Order Nos. OE-2020-023; OE-2020-029; OE-2020-030; OE-2020-033; OE-2020-034; OE-2020-038; OE-2020-041; OE-2020-048 and OE-2020-054.

---

[1] Although Defendants have repeated their view that a security guard service is a better alternative, they have not formally petitioned the Court requesting this remedy.

Plaintiffs have since filed two motions reaffirming their request for a preliminary injunction. (Docket Nos. 117 and 120). Plaintiffs posit that the Monument is currently at a greater risk of vandalism in light of demonstrations throughout the United States calling for the removal of statutes of "conquerors related to slavery, including statues of explorer Christopher Columbus, who is the central figure of the Monument." (Docket No. 117 ¶ 3).

Defendants filed responses to both motions reiterating their position that the fence would only be removable after litigation or during litigation with the Court's authorization and insisting that Plaintiffs obtain insurance prior to the fence's construction. (Docket Nos. 119 ¶¶ 3-4; 121 at 2).

Since this opinion and order pertains to a request for a preliminary injunction, the findings of fact and conclusions of law herein are subject to change after a full hearing on the merits of the case "and the opportunity for more mature deliberation." *See* Francisco Sánchez v. Esso Standard Oil Co., 572 F.3d 1, 15 (1st Cir. 2009) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.3d 742 (2d Cir. 1953)).  In other words, the Court is not prejudging the ultimate resolution of the merits of case.

## II.  FINDINGS OF FACT

Fed. R. Civ. P. 52(a) requires that courts state the findings that support its decision in granting or refusing an interlocutory

injunction. Having analyzed the relevant pleadings on the docket, the Court makes the following findings of fact:[2]

1. Tsereteli is the artist who created the Birth of a New World Monument (the "Monument"). (Docket No. 19 ¶¶ 14, 19).

2. The Monument is a 260 feet tall statue depicting Christopher Columbus traversing the Atlantic Ocean Id. ¶ 18.

3. On November 21, 2013, the following entities entered into the "2013 Agreement": BONWM (represented by Tsereteli) and PAG, Columbus Park, and Holland Group Port Investment (Mayaguez), Inc. (represented by González). PAG and Columbus Park are collectively referred to as "Developer" in the Agreement. (Docket Nos. 19-1 at 1 and 19 ¶ 68).

4. The 2013 Agreement contains the following relevant provisions:

> 1. The parties previously have identified a parcel on Developer's land which includes an area for the Monument (hereinafter, the "Phase One Property"). A map delineating the Phase One Property is attached hereto as Exhibit 1.

> 2. **Upon completion of 75% of the installation, Developer agrees to sub-divide its property at its sole cost and expense, and to transfer the in fee simple Phase One Property for $1.00 outright to BONWM, or its designee.** (BONWM's architects will provide a description of the sage of construction, which represents 75% completion.) Immediately upon execution of this Agreement, a copy of this Agreement, or an appropriate facsimile or record of this commitment, shall be recorded with the

---

[2] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

official property records so as to provide
BONWM with a first lien of highest priority on
the Phase One Property. The parties shall
execute a repurchase agreement ("pacto de
retro") for $1.00 in the event the Monument is
not completed within two years after the 75%
completion mark has been reached by BONWM.

3. The development on the Phase One Property
will include only the installation of the
Monument, a parking lot and a Visitors Center
located on or adjacent to the parking lot. A
map delineating the parking and Visitor Center
is attached hereto as Exhibit 2. All other
future phases at Developer's remaining land
adjacent to the Phase One Property (the
"Project") will be at the sole responsibility
and discretion of Developer.

[…]

10. Until the Phase One Property is
transferred to BONWM, Developer agrees:

> A. To provide reasonable and
> uninterrupted access to the Phase
> One Property to permit BONWM to
> construct and maintain the Monument,
> and if necessary, to permit
> visitation of the Monument by the
> public. Such access shall be as
> specified in Exhibit 2;

[…]

21. The failure of either party to insist, in
any one or more instances, on the performance
of any of the terms, covenants or conditions
of this Agreement, or to exercise any of its
rights, shall not be construed as a waiver or
relinquishment of such term, covenant,
condition or right with respect to further
performance.

(Docket No. 19-1 at 2-4) (emphasis added).

5. Pursuant to the 2013 Agreement, the Monument was installed in Arecibo, Puerto Rico. (Docket Nos. 19 ¶ 18; 27 ¶ 18).

6. As of 2016, 75% of the installation of Phase One of the Monument has been constructed. (Docket Nos. 19 ¶¶ 79, 81; 27 ¶¶ 18, 79).

7. Following its installation, members of the public have been able to gain access to the Monument and climb on top of it. (Docket Nos. 41-4 and 120-1).

### III. LEGAL STANDARD

Fed. R. Civ. P. 65(a) authorizes courts to issue preliminary injunctions upon notice to the adverse party. When faced with a motion for a preliminary injunction, district courts must assess the following four elements:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)(quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)).

## IV.   DISCUSSION

### A. Likelihood of success on the merits

The "likelihood of success" factor "is 'the touchstone of the preliminary injunction inquiry.'" Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quoting Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998)). If said likelihood cannot be demonstrated by the moving party, "the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

However, district courts "need not predict the eventual outcome on the merits with absolute assurance." Ross-Simons of Warwick, Inc., 102 F.3d at 16. Instead they are required to merely "determine whether the district court's conclusion falls within a range of reasonably probable outcomes." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013).

Pursuant to the 2013 Agreement, Defendants PAG and Columbus Park agreed to sub-divide its property and transfer the Phase One Property to BONWM, or its designee, upon 75% completion of the installation. (Fact ¶ 4). Plaintiffs **and** Defendants have affirmed in their pleadings that 75% of the installation has been completed. (Fact ¶ 6). Although Defendants allege that any delay in the transfer was caused by Plaintiffs, they cannot contest that the 2013 Agreement calls for the transfer of the Phase One Property.

(Docket No. 27 ¶ 83). Moreover, the 2013 Agreement contains a non-waiver clause whereby a party's failure to insist on the performance of any of the Agreement's terms "shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with respect to further performance." (Fact ¶ 4).

The Court need not address the probability of success with regards to each cause of action in the *Amended Complaint*. Plaintiffs have shown sufficient likelihood of success on the merits by establishing their contractual right to be transferred land pursuant to the plain text of the 2013 Agreement. *See* Francisco Sánchez, 572 F.3d at 15 ("[I]t is inappropriate for the court, at or after a preliminary injunction hearing, to make findings of fact or conclusions of law that go beyond what is necessary to decide whether a preliminary injunction should be issued.")(internal quotation omitted).

**B. Irreparable harm**

Within the preliminary injunction context, irreparable harm "means an injury that cannot adequately be compensated either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56 (1st Cir. 2005). In other words, irreparable harm exists when traditional legal remedies are inadequate. *See* Doble Seis Sport TV, Inc. v. Puerto Rico (D.P.R. 2019) (quoting Kmart Corp. v. Oriental Plaza,

Inc., 875 F.2d 907, 915 (1st Cir. 1989)); Ross-Simons of Warwick, Inc., 102 F.3d at 18 ("It is usually enough if the plaintiff shows that its legal remedies are inadequate."). Furthermore, the articulated irreparable harm must be "likely and imminent, not remote or speculative." N.A.A.C.P., Inc. v. Town of E. Haven, 70 F.3d 219, 224 (2d Cir. 1995).

There is no adequate *legal* remedy that could prevent, or repair vandalism caused to a one-of-a-kind artwork such as the Monument. Further, Plaintiffs have evinced that such vandalism is likely, and not merely speculative, by providing the court with numerous photographs documenting people climbing the Monument. (Docket Nos. 41-4 and 120-1). Furthermore, since the Covid-19 lockdown measures have been relaxed, the matter regains urgency and irreparable harm is not remote. Notably, although Defendants argue that an "around the clock security guard" would be "more effective and less intrusive[,]" they do not contest the existence of irreparable harm. (Docket No. 61 at 4-5).

## C. Balance of hardships

If Defendants are enjoined by the requested preliminary injunction, they argue that "Plaintiffs' proposed prison type fence would become an eyesore to visitors if PAG's property is developed." (Docket No. 61 at 5). However, Plaintiffs contend that the construction of a security fence presents no hardship to Defendants because Plaintiffs are paying for its installation and

it will be as close as possible to the base of the Monument. (Docket No. 41-1 at 11). On the other hand, if no injunction is issued, Plaintiffs' Monument is at risk of being irreparably damaged. Id. at 10.

The fence being an "eyesore" to hypothetical visitors simply does not amount to hardship that outweighs the potential for injury both to the Monument and the public. In fact, both parties could face hardship in the *absence* of the security fence if a member of the public injures themselves while climbing the Monument on Defendants' property. Plaintiffs are *seeking to assume the totality of the cost* of protecting the Monument, the public, and by extension Defendants. Accordingly, the balance of hardships favors Plaintiffs.

**D. Public interest**

Plaintiffs affirm that "by installing a security fence, the public would immediately benefit from being protected against a clear and present danger. Because serious injury (or even death) could result from climbing the slippery, metallic surface of the Monument (the tallest sculpture in North America)." Id. Regarding this point, Defendants merely reiterate their stance that a private security service could also serve the public interest. (Docket No. 61 at 5).

As stated above, Plaintiffs have provided evidence that people climbing the Monument is not a theoretical risk. (Docket

Nos. 41-4 and 120-1). The absence of a security fence creates the
potential for grave bodily harm to members of the public. Thus, in
the absence of a fence, the monument can pose a nuisance. *See* 32
P.R. Laws Ann. § 2761 (defining nuisance as "[a]nything which is
injurious to health"). Therefore, the public interest factor
favors Plaintiffs' request for a preliminary injunction.

### V.   CONCLUSION

Given that all four preliminary injunction factors favor
Plaintiffs, their request for a preliminary injunction at Docket
Nos. 41 and 120 is **GRANTED**.

Plaintiffs are authorized to construct a security fence as
close to the base of the Monument as possible, to minimize
encumbrance on Defendants' land and avoid damaging the Monument.
**While this lawsuit is pending,** co-defendants José I. González-
Freyre, Pan American Grain Company, Inc., and Columbus Park
Corporation**,** as well as the parties' officers, agents, servants,
employees, and attorneys, and those acting in active concert or
participation with the foregoing are hereby **ENJOINED** from:

- Preventing Plaintiffs, their agents, or contractors from
  installing a security fence surrounding the Birth of a
  New World Monument; and

- Unilaterally removing the security fence without Court
  approval.

Lastly, within fifteen (15) days of entry of this Order, Plaintiffs **SHALL** provide evidence of the estimated cost of removing the fence and deposit said amount with the Clerk of the Court as security pursuant to Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 29th day of October 2020

S/ RAÚL M. ARIAS-MARXUACH_____
United States District Judge